UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>EVERT GALDAMEZ CISNEROS,<br>Defendant. | Case No. 19-cr-00280-RS-5<br><br>**ORDER DENYING MOTION TO SUPPRESS** |

## I. INTRODUCTION

In October 2013, Defendant Evert Galdamez Cisneros was arrested by Customs and Border Patrol agents for entering the country without authorization. He was then released in November 2013. In January 2019, the San Francisco Police Department (SFPD) arrested him for a MS-13-related assault. Following that arrest, in October 2019, federal immigration authorities re-arrested him for his earlier immigration violation and seized his cell phone. Days later, they applied for a search warrant for that cell phone as part of a criminal investigation into his activities as a member of MS-13. Galdamez now argues the statute under which he was arrested is unconstitutional, and his arrest was illegal for various other reasons, so the seizure of the phone should be suppressed as fruit of the poisonous tree. Galdamez's facial constitutional challenge does not prevail. The government was within its rights to re-arrest Galdamez because his alleged participation in the assault counted as a change in circumstances. It then lawfully obtained a search warrant. Because the arrest was legal, the phone's seizure did not violate the Constitution. For the reasons set forth below, the motion is denied.

## II. BACKGROUND

### A. Initial Immigration Arrest

Galdamez's first contact with federal agents was in October 2013, when he was stopped by Customs and Border Patrol agents in the Rio Grande Valley, near the border with Mexico. Galdamez was 15 at the time. He admitted he was a citizen of El Salvador and had crossed the border without authorization. He was transferred to the Department of Health and Human Services' Office of Refugee Resettlement, and then released to a sponsor in November 2013. He later admitted at a hearing to crossing the border illegally. The Immigration Judge continued his case to allow him to apply for relief from removal. In 2017, Galdamez received a temporary Employment Authorization Document from the Department of Homeland Security (DHS, ICE's parent Department), which was extended until August 29, 2019.

### B. Law Enforcement Contacts and Assault Arrest

Between 2013 and 2019 SFPD had several relatively minor contacts with Galdamez: he was spotted with MS-13 members on multiple occasions, and cited for driving without a license. Dkt. No. 377-10, Ex. J. Search Warrant Application. Sometime during this period, Immigration and Customs Enforcement (ICE) began investigating Galdamez's MS-13-affiliated gang, the 20th Street clique, in a joint investigation with SFPD. It is unclear when Galdamez became a target of this investigation.

In January 2019, Galdamez allegedly participated in a gang-related assault of a minor in the Mission District of San Francisco. SFPD believed members of MS-13 had carried out the assault; some of the assailants had knives and a gun. Officers recognized Galdamez fighting in the video of the assault. He was wearing a hat with "MS" on it. This incident forms the basis of Count 10 in the current indictment. He was arrested for assault and battery in February, at which time he claimed to have merely been helping a friend defend himself in the fight. At the arrest, the police seized his Samsung Galaxy phone, which was held for nine months before being searched—not the phone at issue here. They also found a machete and baseball bat in his trunk. The local prosecutor did not charge Galdamez, concluding his assertion of merely helping his friend could

not be disproven. The same day the case was discharged, ICE lodged a detainer request, but Galdamez was nonetheless released.

### C. Re-Arrest for Immigration Violation and Search Warrant

Eight months later, on October 19, 2019, ICE officers re-arrested Galdamez for the same immigration violation for which he had been arrested in 2013. It is this arrest that Galdamez argues was illegal. (Unless otherwise specified, "the arrest" refers to this arrest.) Officer Monroy signed an I-200: a one-page check-the-box form warrant authorizing an arrest for an immigration violation. Officer Monroy and others then arrested him. The arrest team went to Galdamez's apartment, and saw him exit and get into a car. The officers asked him whether he had any legal status to which he responded yes, he had work authorization. (He was arrested at the address he had supplied on that form.) Galdamez was charged with having violated 8 U.S.C. § 1182 (a)(6)(A)(i), the same civil immigration offense lodged against him six years earlier when he entered the U.S. as an unaccompanied minor. Sometime during this arrest, ICE officers seized his LG cell phone pursuant to the arrest, which is the subject of this motion. An ICE agent signed an affidavit for a search warrant of the phone on October 21, 2019, which was approved by a federal magistrate judge the same day.[1] The warrant sought evidence relating to his involvement with MS-13.

ICE held Galdamez for 13 days. The determination to hold him was also made by Officer Monroy, who had signed the warrant and been on the arrest team. Galdamez requested an Immigration Judge review. The immigration prosecutor did not mention any new immigration charges, only the SFPD arrest. The Immigration Judge then granted Galdamez bond because he was neither a danger to the community nor a flight risk, since the charges had been dismissed and he had been free for the past six years. Then, in February 2020, a federal grand jury returned an indictment charging him with racketeering conspiracy, and one count of assault with a dangerous

---

[1] The phone was identified by its International Mobile Equipment Identity (IMEI) number. Galdamez speculates the government must have searched the phone to get the IMEI number, but the government responds that the number is on the back of the phone. It attaches a picture of the phone confirming this. Dkt. No. 413-8.

ORDER DENYING MOTION TO SUPPRESS
CASE NO. 19-cr-00280-RS-5

weapon in aid of racketeering. He was then arrested for a fourth time in March 2020.

### III. LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons... against unreasonable searches and seizures… and no Warrants shall issue but upon probable cause." U.S. Const. Amend. IV. Evidence seized in violation of the Fourth Amendment, including any fruit of the poisonous tree, may be excluded in a criminal proceeding against the victim of the illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471, 487 (1963). That said, the exclusionary rule should be applied only where it will effectively deter law enforcement misconduct. *Davis v. United States*, 564 U.S. 229, 237 (2011).

### IV. DISCUSSION

#### A. Overview

In his opening brief, Defendant presumed the arrest was warrantless. In fact, there was an arrest warrant, as Galdamez now admits in his reply.[2] This means the statute about warrantless arrests for immigration violations is not implicated, despite it occupying much of the briefing. Instead, the key is 8 U.S.C. § 1226(b), which allows for re-arrest after a change in circumstances. (Presumably only with a warrant, otherwise the more stringent requirements of 8 U.S.C. § 1357 would apply.) While Galdamez challenges its constitutionality, that question has been settled to the contrary. *See Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). The government re-arrested Galdamez under this statute after his state arrest. Once he was detained, the government decided to apply for a search warrant for his phone. Galdamez's other concerns are misplaced. The government's conduct was legal.

#### B. Galdamez's Facial Challenge

Galdamez brings a facial constitutional challenge to the statute authorizing his arrest. Under 8 U.S.C. § 1226(b), the government can re-arrest someone who had previously been

---

[2] Galdamez notes this mistake was because the government had not turned over the warrant in discovery.

arrested for an immigration violation. The Board of Immigration Appeals has held that re-arrest can only occur if there has been a change in circumstances. *Matter of Sugay*, 17 I. & N. Dec. 637, 637 (BIA 1981). This decision binds the executive branch, but not the judicial branch.

Galdamez argues this statute is unconstitutional, not only because an administrative warrant cannot be used to re-arrest someone without probable cause of a new crime, but because administrative warrants do not pass constitutional muster.[3] He relies on some lower court decisions that have decided these warrants do not suffice for Fourth Amendment purposes because they are not issued by a neutral official, and other Supreme Court cases in which other administrative warrants were struck down. *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 275-76 (D. Conn. 2008); *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (administrative warrant issued by state Attorney General involved in investigation violated Fourth Amendment).

### 1. Administrative Warrants

At the outset, it is important to note that "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings.").

As to administrative warrants generally, there are many decisions upholding administrative warrants and even suspicionless administrative searches and seizures in different contexts, albeit not this exact statute. *See*, *e.g.*, *Shadwick v. City of Tampa*, 407 U.S. 345, 351-52 (1972) (upholding warrant issued by court clerk); *United States v. Grey*, 959 F.3d 1166, 1177 (9th Cir. 2020) (collecting cases).

In dicta, *Abel* noted that "Statutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time." *Abel v. United States*, 362 U.S. 217,

---

[3] This is despite seemingly acknowledging the legitimacy of an I-200 arrest in his motion; his reply brief challenges the entire statutory regime. Dkt. No. 377, at 15; Dkt. No. 426, at 2.

230 (1960) (upholding an administrative warrant approved by a neutral executive official). In the years since, many lower courts have relied on this dicta to uphold administrative warrants in many contexts. *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1065-66 (D. Ariz. 2018); *see also Gonzalez*, 975 F.3d at 825 (discussing *Abel* favorably: "Congress may delegate certain decisions to executive officials in the immigration context without violating the Fourth Amendment."); *see generally* Lindsay Nash, Deportation Arrest Warrants, 73 Stan. L. Rev. 433, 442 (2021).

Additionally, the Court has explained that where an initial action may not suffice for Fourth Amendment purposes on its own, the statutory scheme as a whole can suffice when there is a prompt determination of probable cause by a neutral and detached magistrate. *Cnty. of Riverside*, 500 U.S. at 56; *see also Gonzales*, 975 F.3d at 824. In fact, in other instances, the Court has upheld mandatory detention in some cases pending a deportation hearing, even without a determination of dangerousness or risk of flight—a far more serious deprivation of liberty with constitutional safeguards than the one at issue here. *Demore v. Kim*, 538 U.S. 510, 531 (2003).

### 2. Re-Arrest

While no panel has squarely addressed whether § 1226(b)'s re-arrest provisions are constitutional, with or without *Sugay*'s added strictures, *see* Nash, Deportation Arrest Warrants, *supra*, the Ninth Circuit and courts in this district have adopted the *Sugay* "change in circumstances" test in several cases. *See Saravia for A.H.*, 905 F.3d at 1145; *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal 2019). Thus, the Circuit has implicitly rejected Galdamez's facial challenge on both administrative warrants and re-arrest. Also, contrary to Defendant's contention, the government is not simply recycling the original probable cause, in violation of *Carlson v. Landon*—it can point to changed circumstances beyond the original probable cause underlying the re-arrest. 342 U.S. 524, 546 (1952).

### 3. § 1226(b)'s Constitutionality

Declaring a statute unconstitutional should be done only when it is "unavoidable." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944). Here, the statutory scheme, taken as a

1   whole, does not compel holding § 1226(b) unconstitutional. This is so for two reasons. First, the
2   Supreme Court and the Ninth Circuit have implicitly endorsed this statutory scheme. *See, e.g.*,
3   *Saravia for A.H.*, 905 F.3d at 1145. Beyond that, *County of Riverside* makes clear that even if an
4   initial warrant may not suffice for Fourth Amendment purposes, a prompt hearing before a neutral
5   and detached magistrate can render the statutory scheme constitutional. 500 U.S. at 56. This logic
6   governs here. All told, there is nothing that makes it unavoidable to declare § 1226(b)
7   unconstitutional. *Spector Motor Serv., Inc.*, 323 U.S. at 105.

**C. Galdamez was Lawfully Re-Arrested Under § 1226(b)**

Someone can be re-arrested under this statute only if there has been a change in circumstances. *Sugay*, 17 I. & N. Dec. at 637. DHS policy also generally requires it to be a material change in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H.*, 905 F.3d at 1137. The relevant considerations are whether the noncitizen poses a danger to the community or an unreasonable risk of flight. *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006). The government rightly points out being arrested for a gang-related assault is a change of circumstances showing danger to the community. An arrest can be considered in determining whether an immigrant should be detained—not only convictions, and not only arrests for crimes of moral turpitude. *Id.* at 40. Just because the Immigration Judge disagreed with the prosecutor's determination and ordered Galdamez ultimately released does not translate into a finding that the arrest itself was illegal. *See Sugay*, 17 I. & N. Dec. at 639. (The other information the government had—laid out in the search warrant application—bolsters its case that it had a good faith belief and good argument that Galdamez was dangerous.) *Carlson v. Landon*, 342 U.S. 524, 534 (1952) (denial of bail is within the Attorney General's discretion so long as it has a "reasonable foundation").

Galdamez argues re-arrest under this statute was illegal, for two reasons. First, the Immigration Prosecutor did not cite § 1226(b) on the record. The government responds, correctly, that there is no such requirement. It explained it was concerned by the arrest; it is no great leap to understand this as a reference to there being a changed circumstance about dangerousness.

ORDER DENYING MOTION TO SUPPRESS
CASE NO. 19-cr-00280-RS-5

7

1    Second, Galdamez argues the arrest was arbitrary and capricious, violating his due process rights.

2    *Rubinstein v. Brownell*, 206 F.2d 449, 455 (D.C. Cir. 1953), *aff'd,* 346 U.S. 929 (1954). He points

3    to the eight-month delay as indicative of a lack of concern as to dangerousness on the part of the

4    government. Yet, the government is under no obligation to act with any particular speed. If 20

5    years had passed, the inference Galdamez was dangerous because of the arrest would be weaker,

6    perhaps to the point of being extinguished; eight months does not prompt such a conclusion.

7       Galdamez also relies on *Ortega* to imply there must be a hearing before deprivation of

8    liberty in this context. 415 F. Supp. 3d at 963. In *Ortega*, an injunction was granted against ICE

9    re-arresting the plaintiff without a hearing. Even if a similar injunction were granted for Galdamez

10   at some point in the future, it would come after arrest and search of the phone. The law does not

11   require a hearing before arrest in this circumstance. An injunction in one case does not create a

12   generalized obligation to grant a hearing before arrest.

13   **C. Other Arguments**

14   Galdamez makes various other arguments against his arrest, none of which are availing.

15   Galdamez complains about the detainer, but it had no effect on his subsequent arrest. Galdamez's

16   complaint that as a non-fugitive, he was improperly arrested by a "fugitive task force" is belied by

17   the fact that it is that unit which executes pre-planned arrests. In any event, as an internal ICE

18   matter it does not create rights or remedies. *See United States. v. Artis*, 919 F.3d 1123, 1130 (9th

19   Cir. 2019). Before he realized there was a warrant, Galdamez argued he was entitled to a finding

20   of probable cause by a neutral magistrate within 48 hours, or the government needed to justify any

21   further delay. This applies only to warrantless arrests, as opposed to a warrant arrest in which the

22   Immigration Judge sets the time of the hearing. C.F.R. § 1003.18(a).[4] Galdamez also argues ICE's

23   initial custody determination should have been made by a non-arresting officer. The government

24   responds the officer has the authority to make custody determinations as a Supervisory

25   Deportation and Detention Officer. 8 C.F.R. § 236.1(b)(1), § 287.5(e)(2)(xxxii). While this does

---

[4] Also, it is unclear whether suppression would be warranted based on conduct from after the seizure and search warrant application.

ORDER DENYING MOTION TO SUPPRESS
CASE NO. 19-cr-00280-RS-5

8

not address Galdamez's point that it is supposed to be someone other than an arresting officer, it is unclear whether the portion of the regulation Galdamez cites applies throughout. In any case, it does not give rise to suppression as a remedy. This would not be a constitutional violation, let alone flagrant government misconduct, as discussed below.

### D. Good Faith Exception

Even if Galdamez could show an illegal arrest had taken place, suppression would not be warranted. The intersection of criminal and immigration law raises thorny questions. Yet here the government chose a safe route and obtained an arrest warrant and then a search warrant. True, it did not get a criminal arrest warrant, and the arrest may have been motivated by the criminal investigation. Yet even pretextual arrests are generally legal.[5] Further, it appears the government could have simply gotten a search warrant for the phone without the arrest: the application did not incorporate any information gleaned from Galdamez's arrest, let alone depend on it. Dkt. No. 377-10. There is no indication the arrest was a ruse to gather evidence for the search. This is not flagrant government misconduct justifying suppression. *Davis*, 564 U.S. at 238.

### V. CONCLUSION

For the reasons set forth above, the motion is denied.

**IT IS SO ORDERED**.

Dated: December 14, 2021

RICHARD SEEBORG
Chief United States District Judge

---

[5] Misusing an administrative warrant to gather evidence for a criminal case may lead to an inquiry into the government's subjective motivations, and possibly suppression. *See United States v. Grey*, 959 F.3d 1166, 1181 (9th Cir. 2020) (discussing pretext in different contexts). Generally, though, looking at subjective motivations is improper when the administrative action is based on individualized suspicion, as here. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011).